UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL CASE NO. 16-40-DLB-CJS
CIVIL CASE NO. 17-195-DLB-CJS

UNITED STATES OF AMERICA                                                                   PLAINTIFF

v.        **REPORT AND RECOMMENDATION**

THELMO LEON WRIGHT                                                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

Defendant Thelmo Leon Wright, *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (R. 78). The United States has filed its Response (R. 86), to which Wright has filed a Reply (R. 88). Having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation. *See* 28 U.S.C. § 636(b). For the reasons stated below, it will be recommended that Wright's § 2255 Motion be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On October 13, 2016, Wright and two codefendants, Londel Davis, III and Anthony Patrick Lashley, were indicted in Count 1 for:

> knowingly conspir[ing] with each other and others to commit offenses against the United States, that is the presenting of materially altered Postal Service Money Orders (hereinafter "PMOs") unlawfully made, with intent to defraud the United States Post Office, in violation of 18 U.S.C. § 500, all in violation of 18 U.S.C. § 371.

(R. 1). Multiple overt acts were alleged as part of Count 1, including that Wright rented a white Hyundai Sonata from Enterprise in Englewood, New Jersey, on August 29, 2016; and that on ten occasions between August 31, 2016 and September 6, 2016 multiple altered PMOs purchased

originally in New Jersey on August 19 were passed or attempted to be passed in Kenton, Campbell and Boone counties in Kentucky. (*Id.* at 4-7). On September 6, 2016, Wright and his codefendants were apprehended in the white Sonata and the following items were possessed by them:

> (1) LONDEL DAVIS, III, possessed six PMOs on his person. One of the PMOs included the $180 PMO purchased from the Erlanger Post Office on September 2, 2016. Davis was also in possession of two of which were originally purchased for a different amount and were raised to $1,000 each. He also possessed on his person six fraudulent out of state driver's licenses in various names other than LONDEL DAVIS, III, an American Express credit card in the name of M.G. and a Wells Fargo MasterCard in the name of J.W.
>
> (2) ANTHONY PATRICK LASHLEY possessed five PMOs. Two of the PMOs in the amounts of $800 and $180, bearing serial numbers 22511367966 and 22511367977, respectively, had been purchased on September 1, 2016, at the West Side Post Office in Frankfort, Kentucky.
>
> (3) THELMO LEON WRIGHT possessed $4,601.24 in cash and four credit cards in the names of A.C., M.G., and A.W., and a fraudulent New Jersey driver's license in the name of M.G.
>
> (4) Also possessed in the vehicle by the co-conspirators was a bag containing PMOs, found in the back pocket of the front passenger seat. The bag contained six raised PMOs in the amounts of $1,000, along with approximately thirty PMOs purchased for the amounts of $1.17 and $1.21 from Post Offices in Florence, Kentucky and Erlanger, Kentucky on September 6, 2016.

(Presentence Investigation Report "PSR" at 6-7).

On February 2, 2017, Wright entered a plea of guilty to Count 1 of the Indictment, Conspiracy to Present Altered Money Orders in violation of 18 U.S.C. § 371. (R. 39). Following the plea, the Court conducted a bond revocation hearing, based on evidence and testimony that Wright had continued his criminal scheme after his arrest in September 2016 up through February 1, 2017. (R. 41; R. 42, R. 54). The United States' motion to revoke bond was granted. (R. 41).

Prior to sentencing, Wright filed a Memorandum arguing that "[j]ust punishment can be found in granting Mr. Wright acceptance of responsibility and denying the role enhancement sought in the PSR." (R. 50 at 3). Wright argued that the recommended sentencing guideline was "based

solely upon hearsay regarding unindicted conduct" and was a denial of due process. (*Id.*). The hearsay to which Wright objected was a statement by Nathanial Taylor, an informant who was interviewed by Postal Inspectors on May 12, 2016. (PSR at ¶ 26).

Wright's sentencing hearing was conducted May 8, 2017 and a transcript filed in the record. (R. 56; R. 75). After hearing arguments on both sides, the Court held that the Taylor hearsay statement was admissible for sentencing as there was sufficient indicia of reliability and further that there was sufficient other evidence of Wright having a management role to enhance his Offense Level. (R. 75 at 5-12). Defense counsel acknowledged that Sixth Circuit case law was contrary to his objection to the hearsay. (*Id.* at 4-5). Regarding acceptance of responsibility, the Court agreed with Wright, however, over the objection of the government, that Wright was entitled to a two-level reduction in his Offense Level. (*Id.* at 12-18). The government argued that evidence of a continuation of the criminal scheme after Wright's arrest, but prior to his plea, should be considered as showing a lack of acceptance. (*Id.*). The Court disagreed. (*Id.*). With respect to a third level reduction, the Court noted the third level was within the discretion of the United States, a fact acknowledged by defense counsel. (*Id.* at 18). The United States declined to recommend a third level reduction and maintained its objection to the Court's two-level reduction for acceptance of responsibility. (*Id.*). The Court noted the parties could fight it out in the Sixth Circuit, as they both had preserved their guidelines objections. (*Id.* at 18, 31). The Court sentenced Wright to a term of 38 months' imprisonment, which was below the 46 months sought by the United States. (*Id.* at 28; R. 52 at 4). Wright was provided a written notice of his right to appeal and instructed to go over it with his attorney and to let the Court know if he had any questions. (*Id.* at 32; *see also* R. 56, Minute Entry for Sentencing). The written notice advising that any appeal must be filed within 14 days

from the date of entry of judgment was signed by Wright and is contained in the record. (R. 60). Judgment was entered on May 11, 2017. (R. 62).

On August 28, 2017, Wright moved to request time to file a direct appeal, which motion was denied. (R. 76; R. 79). On October 23, 2017, Wright filed a Motion to Vacate under 28 U.S.C. § 2255, alleging ineffective assistance of counsel for failure to file a notice of appeal "on the two (2) preserved sentencing issues." (R. 80 at 4). Those sentencing issues are identified as "being subjected to the leader enhancement because the government's sole reliance on statements from an informant with no attachment to this case, whatsoever, lack the necessary 'indicia of reliability' to impose the enhancement," and that he "should have been given the additional one point for acceptance of responsibility" … "because any relevant conduct claimed by the government could have been charged separately by the government." (*Id.*). As his second claim, Wright said counsel was ineffective for his failure to interview his two codefendants, "which would have established that I was not the 'leader' of this conspiracy and not subject to the 'leadership' enhancement." (*Id.* at 5).

The United States responded that Wright never asserted he gave his former counsel instructions to file an appeal and that counsel, Stephen Smith, in his affidavit said Wright "never instructed [him] to file an appeal." (R. 86 at 3). The government notes that "Wright acknowledges that Smith either talked with him or sent him a letter after sentencing." (R. 80 at 4 ("I talked to counsel or was written [sic] by him after my sentencing."); R. 86-1 at 2, Smith Affidavit at ¶ 6; R. 86-1 at 3-4, May 9, 2017 letter). Smith's Affidavit says he "discussed the possibility of an appeal with Mr. Wright, in person and by letter." (R. 86-1 at 2). Smith's May 9 letter "strongly recommended against an appeal, due to the lack of a viable basis combined with a potential appeal by the USA." (*Id.*). The letter concluded in the last several paragraphs with the following: "I also know that by letter or through your family or other means, you can communicate with me. If you

4

want to instruct me to file a notice of appeal I need to know that affirmatively." "Please write or phone with any instructions related to an appeal other than not filing an appeal…." "Again, I will not appeal any issue in your case unless specifically instructed to do so by you." (R. 86-1 at 4). The United States further responded that Wright cannot show prejudice from the failure to appeal. (R. 86 at 4).

Regarding Wright's claim that Smith failed to investigate and interview witnesses, the United States notes that Wright makes only conclusory allegations regarding the testimony of his codefendants, without any supporting facts. (*Id.* at 5). Smith's Affidavit states that one codefendant signed a plea agreement that would not be helpful to Wright and that counsel for the other codefendant advised that his client "would not have helped Mr. Wright's cause." (R. 86 at 3-4; R. 86-1 at 2).

In his Reply, Wright argues that Smith's Affidavit and accompanying letters are "contradictory, on its [sic] face, and defies [sic] logic and credulity." (R. 88 at 2). He notes that, immediately after sentencing, he was taken to the Campbell County Detention Center where he remained for five days before being moved to the Grayson County jail. (*Id.* at 3). Because Smith's May 9 letter states: "I will make every attempt to come and see you," Wright argues this language proves that Smith did not consult with Wright in person about an appeal after sentencing the day before. (*Id.*). Wright complains the government has not produced a visitor log from Campbell County to prove Smith visited, nor are there legal mail logs from any prison or jail where Wright was housed to prove that Wright received the letters. (*Id.* at 3-4). Wright states that no "in person" meeting to discuss an appeal ever happened. (*Id.* at 4). Accordingly, he argues this is a factual dispute requiring an evidentiary hearing. (*Id.*).

Next, Wright argues Smith's Affidavit and the letter's language imply Smith was aware of Wright's desire to appeal. (*Id.* at 5). He also relies on the Court's comment that the parties could fight in the Sixth Circuit regarding the acceptance of responsibility issue as evidence that a reasonable attorney would not "forfeit an appeal on the acceptance of responsibility issue…." (*Id.*). The context of the Court's comment, however, shows that it was referring to the "Government's" appeal on acceptance of responsibility, not Wright's.

> MS. VOORHEES: Well, Judge, I hear what you've said about making your decision regarding giving him at least the two levels off for acceptance of responsibility. We'll maintain our objection on that.
>
> THE COURT: Your record is preserved. You agree, Mr. Smith that her record is preserved on that, just like yours is on the leadership role, correct?
>
> MR. SMITH: Agreed.
>
> THE COURT: Okay, good. You all can fight it out in the Sixth Circuit. What's a good sentence?

(R. 75 at 18). Wright continues that Smith's recognition that Wright was disgruntled "is sufficient evidence to establish that he should have consulted with Wright regarding an appeal and allow Wright to determine whether he desired to move forward." (R. 88 at 7). Finally, on the issue of consultation regarding an appeal, Wright argues that he was adamant about not having a managerial role, that there was disparity with the sentences of his codefendants, and that these factors "would compel any reasonable defendant to desire an appeal." (*Id.* at 8).

Regarding counsel's alleged ineffectiveness for failing to investigate, Wright contends that the plea agreement of his codefendant is "circumstantial evidence" and thin to support an enhancement. (*Id.* at 9). Wright relies on the fact that "an initial plea agreement offered to Wright by the government" did not "cite" him as a leader and its Guideline Recommendation did not add points for a leadership role. (*Id.* at 9-11). Yet, he acknowledges he did not enter into that plea

6

agreement. (*Id.* at 11). Wright admits that Smith repeatedly told him that "the statements from his two codefendants would not be enough." (*Id.* at 12). Wright argues that his enhancement was "based solely on the uncorroborated hearsay testimony of non-conspirator, Taylor, and the thinly veiled evidence of Wright being the one who rented the car." (*Id.* at 11). He claims his codefendants would "corroborate his story that he was not the leader in this conspiracy." (*Id.*). He also asserts they would have testified that Wright rented the car because he was the only one "who possessed the requisite credit card to rent a vehicle." (*Id.* at 12). Wright claims these facts, had they been investigated, would have defeated the indicia of reliability of Taylor's statement and avoided the enhancement for a leadership role. (*Id.* at 14). Accordingly, he claims prejudice from counsel's failure to investigate.

## II.    ANALYSIS

### A.    Ineffective Assistance of Counsel Standard

To assert an ineffective assistance of counsel claim successfully, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a]

fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.").

With respect to failing to file a notice of appeal, counsel has a duty to file a timely notice of appeal if requested to do so by his client. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). To determine if ineffective assistance occurred, courts must first determine whether:

> counsel in fact consulted with the defendant about an appeal. We employ the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered. Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."

8

*Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). *See also Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003) (quoting *Flores-Ortega*). Counsel has a duty to consult only if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega,* 528 U.S. at 480.

      **B.**    **Wright Failed to Allege That He Requested a Notice of Appeal Be Filed or That Counsel Failed to Consult with Him Regarding an Appeal; Moreover, He has Shown No Prejudice.**

Wright never states that he expressly directed a notice of appeal be filed. Instead, he relies on his interpretation of his counsel's letter and the court's comments during sentencing as giving rise to an unmistakable inference that he wanted to appeal. He also argues that former counsel Smith did not consult with him "in person" regarding an appeal. Wright cites no authority for his assertion that a lawyer's consultation must be "in person," nor is this Court aware of any such authority. The Supreme Court only requires "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega,* 528 U.S. at 480. After consultation, counsel has a duty to file a notice of appeal only "if requested to do so by his client."

First, Wright's arguments do not give rise to a duty to consult. His arguments on appeal would be frivolous, as discussed below, and he has not reasonably demonstrated to counsel his interest in appealing. *Flores-Ortega,* 528 U.S. at 480.

Nonetheless, consultation did occur. Wright admits he either talked with counsel or counsel wrote to him after sentencing. (R. 80 at 4; "I talked to counsel or was written by him after my sentencing and never received any notice of judgment as can be verified by the fact that I received no legal mail in any of the institutions I was sent to."). He does not deny receiving counsel's May 9,

9

2016 letter; he only denies receiving a copy of the judgment. (*Id.*). Counsel's affidavit states that he discussed the possibility of appeal with Wright in person and by letter and that Wright "never instructed me to file an appeal." (R. 86-1 at 2). Counsel notes that Wright's friend, mother and father had his email and phone number. (*Id.* at 1). Wright communicated with counsel several times after his incarceration and "never mentioned the lack of an appeal in his criminal matter." (*Id.*). The May 9 letter strongly advises against an appeal because Sixth Circuit case law is contrary to Wright's argument regarding the use of hearsay at sentencing, and the government would likely appeal the granting of a two-level reduction for acceptance of responsibility. (*Id.* at 4). In other words, Wright had very little chance of winning and could well have received an even higher sentence if the government won. Finally, Wright was advised the day of sentencing, May 8, 2017, that he had only 14 days to appeal after judgment was entered. (R. 60). Yet he waited until August 28, 2017, more than three months later, to request time to file an appeal. (R. 76). He waited two more months before filing his motion to vacate.

The burden is on Wright to prove ineffective assistance of counsel by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The burden is not on the government to disprove Wright's bare allegations regarding the lack of an in-person meeting or receipt of judgment. Second, counsel did consult with Wright, at least by letter, and directed Wright to let him know affirmatively if he wanted to appeal and that he would not appeal "unless specifically instructed to do so by you." (R. 86-1 at 4). Having consulted with Wright, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Wright never alleges he expressly instructed counsel to file an appeal nor does the record support that such

10

an express instruction was given. Accordingly, Wright's claim of ineffective assistance of counsel regarding an appeal is without merit.

Moreover, Wright cannot show prejudice. In *United States v. Katzopoulos*, 437 F.3d 569 (6th Cir. 2006), the court held that "the confrontation clause does not apply in sentencing." *Id.* at 575. In *Katzopoulos*, hearsay evidence was used to establish enhancements which allowed the judge to raise the Guidelines. *Id.* While a "minimum indicia of reliability" is required under United States Sentencing Guideline ("U.S.S.G.") § 6A.1.3(a) and *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992) (en banc), to satisfy due process, this has been described as "a relatively low hurdle." *United States v.* Moncivias, 492 F.3d 652, 658-9 (6th Cir. 2007); *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995).

In the present case, the evidence of a leadership role by Wright included his admission in his plea to the indictment facts that he rented a white Sonata from Enterprise in New Jersey in August 2016, was apprehended in that vehicle with his codefendants after multiple efforts to pass altered PMOs in Kentucky, and possessed $4,601 in cash, along with multiple fraudulent credit cards and a fraudulent driver's license. Three dozen PMOs were in a bag in the back pocket of the front passenger seat. (R. 39; R. 1 at 4-7). None of the codefendants had any cash. (*Id.*). At Wright's bond revocation hearing, the United States produced evidence that Wright rented multiple vehicles on a weekly basis from Avis in New Jersey between September 2016 through February 1, 2017, and from Enterprise in New Jersey during the same period. (R. 54 at 2-9). One vehicle rented for five weeks in June 2016 had over six thousand miles put on it. (*Id.* at 9). Wright also rented a Ford Fusion on January 25, 2017 from Avis in New Jersey. It was used by a male who attempted to pass fraudulent money orders in Cincinnati but fled when he was unsuccessful. The license plate was traced to Avis. Wright returned that vehicle on February 1, 2017. (*Id.* at 2-8). There was additional evidence

that Wright was arrested at LaGuardia airport on April 20, 2016, and possessed a bag of altered money orders, fraudulent IDs, fraudulent credit cards and a laptop with a money order template on it for United States Postal Service money orders. Wright pled guilty in New York to the state charges associated with this arrest. (*Id.* at 10). All of this evidence certainly provides some minimal indicia of reliability to Taylor's hearsay statement that Wright used his equipment to alter the amounts printed on money orders, rented cars to drive Taylor to target post offices, provided Taylor with fake IDs to present when cashing the money orders, and kept 80 percent of every money order cashed. (PSR at ¶ 26). Accordingly, Wright's objection to the use of hearsay for purposes of his sentence is without merit.

Moreover, Wright cannot show prejudice from the failure to file a notice of appeal. As discussed above, Sixth Circuit law is contrary to his argument regarding the use of hearsay at sentencing; thus, he almost certainly would not have prevailed on that issue even if a notice had been filed. Additionally, the Court correctly ruled that Wright was not automatically entitled to a third-level reduction for acceptance of responsibility. Section 3E1.1 of the United States Sentencing Guidelines provides:

> **(a)** If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
> **(b)** If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1. *United States v. Harper* summarized this Guideline as follows:

> According to the Sentencing Guidelines, a district court may grant a defendant a two-level downward adjustment to his base offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G § 3E1.1(a). A defendant may be eligible for an additional one-level adjustment if the "defendant

has assisted authorities in the investigation or prosecution of his own misconduct" and his offense level, prior to the application of § 3E.1.1(a) was greater than level 16. U.S.S.G § 3E.1.1(b).

*United States v. Harper*, 246 F.3d 520, 525 (6th Cir. 2001) (overruled on other grounds in *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002)). An additional level decrease under § 3E.1.1(b) is available only upon "motion by the government." Here, the government declined to make such a motion. (R. 75 at 18). Accordingly, Wright would not have prevailed on this issue.

Wright argues in his Reply that there is a question of fact as to whether counsel consulted with him "in person" regarding an appeal; accordingly, he says he is entitled to an evidentiary hearing. (R. 88 at 5). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007). Here, Wright's allegations are contradicted by the record and even by some of his own statements. Accordingly, no hearing is necessary.

      **C.**    **Counsel Was Not Ineffective for Failing to Interview Codefendants.**

Wright contends his codefendants would have exonerated him on the issue of a leadership role. He provides no factual basis for that conclusory opinion, however. Conclusory allegations of ineffective assistance are insufficient to state a constitutional claim. *Wogenstahl v. Morgan*, 668 F.3d 307, 343 (6th Cir. 2012). Moreover, counsel did investigate and knew one codefendant had entered into a plea agreement that recited facts from the Indictment regarding Wright's role and this recitation was not helpful to Wright. (R. 86-1 at ¶ 9; R. 43). Counsel also discussed the matter with the other codefendant's lawyer and was told that "putting him [the other codefendant] on the witness stand would not have helped Mr. Wright's cause. (*Id.*). Thus, counsel did competently investigate Wright's allegations that his codefendants would exonerate him and found those claims lacked any

13

merit. This information, when combined with the other evidence of Wright's leadership role, confirms that Wright suffered no prejudice from counsel's failure to investigate further.

### III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Wright's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be further recommended that a certificate of appealability be denied upon the District Court's entry of its final order in this matter.

## IV.   CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

1)   Defendant Thelmo Leon Wright's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (R. 80) be **denied;**

2)   a Certificate of Appealability be **denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

3)   Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and

4)   this action be stricken from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b).  Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 17th day of September, 2018.



**Signed By:**
*Candace J. Smith*
**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 R&R general\16-40 Wright R&R.pwcjs.wpd